JAP:DMP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**12 M 515**

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JOEL ANTONIO CRUZ GIL and
JELFRY GARCIA CANARIO,

            Defendants.

C O M P L A I N T

(T. 21, U.S.C. § 846)

- - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

        ERIC PAUTA, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, ("HSI"), duly appointed according to law and acting as such.

        Upon information and belief, on or about May 30, 2012, within the Eastern District of New York and elsewhere, the defendants JOEL ANTONIO CRUZ GIL and JELFRY GARCIA CANARIO did knowingly and intentionally conspire to distribute and possess with intent to distribute a substance containing heroin, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance, in violation of Title 21 U.S.C. § 841(a)(1).

        (Title 21, United States Code, Section 846).

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.   On or about May 30, 2012, the defendants JOEL ANTONIO CRUZ GIL and JELFRY GARCIA CANARIO arrived at JFK International Airport ("JFK"), in Queens, New York aboard Jet Blue Flight No. 810 from Santo Domingo, Dominican Republic. Defendants CRUZ and GARCIA were traveling on tickets purchased at the same date/time and each had put the same contact phone number on their tickets.

2.   Defendant JELFRY GARCIA CANARIO was selected for a Customs and Border Protection ("CBP") enforcement examination. The CBP officer observed that GARCIA appeared to be visibly nervous.  The CBP officer also observed that GARCIA was wearing loose-fitting, baggy clothing, but had a noticeable bulge around his groin area.

3.   Defendant JELFRY GARCIA CANARIO was escorted to a private search room for a pat-down.  The CBP officer conducted a pat-down and felt a hard object in GARCIA's groin area.  GARCIA was asked to lower his pants.  He did so, revealing a plastic-wrapped package duct taped to his groin area, resembling a diaper.  GARCIA was asked to remove the package, which he did.  A pellet taped to the inside of the "diaper" was removed and probed

---

[1]   Because the purpose of this affidavit is merely to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware.

to reveal the presence of a brown powdery substance.  The brown powdery substance field-tested positive for heroin.

4.    The plastic package removed from defendant JELFRY GARCIA CANARIO's groin area was then separated from the inside of the duct-taped diaper and unwrapped, revealing another duct-taped package concealed in coffee.  That interior package was cut open, revealing a white powdery substance contained within wax paper. The white powdery substance field-tested positive for the presence of cocaine.

5.    The total approximate gross weight of heroin recovered from defendant JELFRY GARCIA CANARIO's person was 124 grams.  The total approximate gross weight of cocaine recovered from defendant JELFRY GARCIA CANARIO's person was 1,164.1 grams.

6.    Defendant JELFRY GARCIA CANARIO was placed under arrest.  He was given his Miranda warnings, which he stated that he understood and agreed to waive.  GARCIA stated that he knew he was bringing illegal drugs into the United States and he was to be paid $5,000 for doing so.

7.    GARCIA also stated the following, in sum and substance and in part:  Prior to the drug trip, GARCIA was in Puerto Rico, where he resides, when he received a call from defendant JOEL ANTONIO CRUZ GIL.  CRUZ proposed to GARCIA that he could make money by carrying drugs from the Dominican Republic to the United States.  GARCIA agreed to carry drugs.  Both GARCIA

and CRUZ traveled to the Dominican Republic, where CRUZ introduced GARCIA to the individuals who provided the drugs. On May 30, 2012, GARCIA and CRUZ met with those individuals, and they provided GARCIA with the drugs and helped fashion the "diaper" that GARCIA wore. GARCIA then wore the "diaper" with the drugs on the airplane.

8. HSI agents then spoke to defendant JOEL ANTONIO CRUZ GIL. CRUZ had also been selected for an enforcement examination, which was negative. Although CRUZ had not been placed under arrest at that point, HSI agents gave CRUZ his Miranda warnings. CRUZ stated that he understood his Miranda rights and agreed to waive them. CRUZ stated the following, in sum and substance and in part: CRUZ traveled to the Dominican Republic, and gave the suppliers of the drugs $4,000 as a down-payment on the drugs. CRUZ introduced GARCIA to the drug importation scheme and made the arrangements for GARCIA to carry the drugs back to the United States, for which CRUZ was to be paid $1,000. CRUZ then traveled with GARCIA on the same flight from the Dominican Republic in order to make sure that there were no problems bringing the drugs into the United States.

5

9.    WHEREFORE, your deponent respectfully requests that the defendants JOEL ANTONIO CRUZ GIL and JELFRY GARCIA CANARIO be dealt with according to law.

ERIC PAUTA
Special Agent, HSI

Sworn to before me this
31st day of May, 2012

THE H        OLD
CHIEF        TRATE JUDGE
EASTE        ORK